OPINION OF THE COURT
 

 ROTH, District Judge:
 

 I. INTRODUCTION
 

 This is an appeal from an order of the district court, affirming the judgment of the bankruptcy court in
 
 In re Butler,
 
 75 B.R. 528 (Bankr.E.D.Pa.1987). Appellees, the Butlers, filed a Chapter 13 bankruptcy petition on June 17, 1986, and thereafter sought to have the bankruptcy court avoid a sheriff’s sale of their residence which had taken place on May 6, 1985. To that end, debtors relied upon 11 U.S.C. § 548 of the federal bankruptcy law, which section allows a bankruptcy trustee to avoid constructively fraudulent transfers of the debtors’ property made within one year prior to the filing of a bankruptcy petition. A debated issue, unresolved to date by this court, is whether a mortgage foreclosure may ever be considered a constructively fraudulent transfer as defined in section 548.
 
 [1]
 
 We are not required here to decide
 
 *1016
 
 that issue for we find that, even assuming section 548 may be applied to foreclosures,
 
 [2]
 
 in this case the transfer did not take place within one year of the Butlers’ bankruptcy petition. Because the transfer did not take place within the one-year window, we reverse the decision of the lower courts to set aside the sheriffs sale.
 

 Moreover, because our decision on the timing of the transfer is dispositive of this appeal, we need not review here the finding of the lower courts that less than reasonably equivalent value was paid by the purchaser at the Sheriff's sale.
 

 Jurisdiction for appeal to this court is founded on 28 U.S.C. § 158(d), which allows for appeals from the final orders of the district courts. As this appeal presents a question of law, review is
 
 de novo. 1 Collier on Bankruptcy
 
 113.03[7].
 

 II. BACKGROUND
 

 In 1969, Bernard and Mary Butler purchased a home in Philadelphia with financing provided by the Lomas and Nettleton Company, the appellant (hereinafter “Lo-mas”). The Butlers have not made any mortgage payments to Lomas since April 1, 1983, but to date remain in the home. In December, 1984, Lomas instituted an action in mortgage foreclosure. The complaint alleged a principal debt of $7,871.06, and a total amount due of $9,122.82.
 

 Lomas obtained a judgment of foreclosure, and a Sheriffs sale of the premises was conducted on May 6, 1985. No bids were made. The premises were sold to Lomas for the sum of $2,664.90, an amount representing the taxes and costs toward the Sheriff’s sale. On June 24, 1985, the Sheriff of Philadelphia County signed the deed to consummate the Sheriff’s sale, and the deed was recorded that day.
 

 a)
 
 Section 5It8
 

 On June 17, 1986, the Butlers filed a petition in bankruptcy under Chapter 13 of the federal Bankruptcy Code. 11 U.S.C. §§ 1301,
 
 et. seq.
 
 The Butlers then brought the instant action to set aside the sale as a fraudulent conveyance under section 548.
 
 [3]
 

 
 *1017
 
 Section 548 empowers the trustee to avoid conveyances made with fraudulent intent, i.e., actually fraudulent (§ 548(a)(1)) as well as constructively fraudulent conveyances (§ 548(a)(2)). A conveyance is constructively fraudulent if: 1) the debtor was insolvent on the date of transfer (§ 548(a)(2)); 2) the debtor received less than “a reasonably equivalent value” in exchange for the transfer (§ 548(a)(2)(A)); and 3) the transfer is made within one year prior to filing the bankruptcy petition (§ 548(a)).
 

 b)
 
 The Bankruptcy Court Opinion
 

 The bankruptcy court found the foreclosure sale to be constructively fraudulent under the three-part test set out above. First, the parties agreed that the Butlers were insolvent at all relevant times.
 
 Appendix
 
 4a. Second, the bankruptcy court found that the property was transferred for less than its reasonably equivalent value. Relying on an appraisal of the property offered by the Butlers’ expert witness, the court found that property was worth $18,000. 75 B.R. at 531 & n. 3. Given this appraisal, the court found that the debtors realized through the sale 57.3% of the value of the premises, i.e., the mortgage balance of $7,871.06 plus the $2,644.90 paid by Lomas to cover the taxes and costs of the sale for the sum of $10,515.96.
 
 Id.
 
 at 531. Based on two cases in which the court found inadequate value had been received, the bankruptcy court concluded that the Butlers had not received reasonably equivalent value.
 
 Id.
 
 at 531-32
 
 (citing In re Jones,
 
 20 B.R. 988, 993-94 (Bankr.E.D.Pa. 1982) (between 48.5 to 58 percent of premises’ value is not reasonably equivalent value);
 
 Durrett v. Washington National Insurance Co.,
 
 621 F.2d 201, 203-04 (5th Cir.1980) (57.7% of premises’ value is not reasonably equivalent value).
 

 Turning to the third prong of the test for constructive fraud, the bankruptcy court found that the transfer, i.e., the foreclosure sale, took place within one year of the filing of the bankruptcy petition by the Butlers. The lower court conceded, however, that determining the time of transfer presented a “close question.”
 
 Id.
 
 at 532; that is, did the transfer occur on May 6, 1985, the date of the sheriff’s sale, or on June 24, 1985, the date on which the deed was delivered by the Sheriff of Philadelphia County and recorded? The bankruptcy court found the latter date, June 24, 1985, to be the time of the transfer and so concluded that the sale took place within one year prior to the June 17, 1986, filing of the bankruptcy petition.
 

 In reaching this decision the court relied primarily on case law which establishes the general proposition that transfers are effected on the dates of perfection by recording, not on the dates of sale.
 
 Id.
 
 at 532
 
 (citing In re MacQuown,
 
 717 F.2d 859, 862-63 (3d Cir.1983);
 
 In re Jacobs,
 
 60 B.R. 811, 815-16 (M.D.Pa.1985);
 
 In re Rouse,
 
 48 B.R. 236, 240 (Bankr.E.D.Pa.1985)). The court further found that certain policy and equitable concerns weighed in favor of the Butlers. Specifically, the court noted certain case law and legislative action in Pennsylvania which it found comprised a trend in Pennsylvania to protect the rights of mortgagors.
 
 Id.
 
 at 533.
 
 [4]
 
 The court further reasoned that the Butlers had lived in the house for sixteen years and Lomas could retain a lien for the amount it was due. Finally, the court speculated that Lo-mas would lose little, if anything, if the Butlers were allowed to remain in the house and cure the mortgage delinquencies.
 
 Id.
 

 III. ANALYSIS
 

 The bankruptcy court did not analyze or even refer to section 548(d)(1), the opera
 
 *1018
 
 tive section for determining the time of a fraudulent transfer. Our analysis begins with an examination of this section, which provides:
 

 For purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer is made cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee....
 

 11 U.S.C. § 548(d)(1). State law governs when a transfer is perfected against bona fide purchasers. 4
 
 Colliers on Bankruptcy
 
 ¶ 548.08 (15th ed. 1987). We must then look to the law of bona fide purchasers in Pennsylvania and answer this specific question: if the Butlers sold their residence immediately after Lomas purchased the property at a Sheriffs sale, could the subsequent purchaser assert a claim to the property superior to that of Lomas? The Butlers argue that Lomas could not obtain priority until the deed to the property was acknowledged and delivered by the sheriff (June 24, 1985). Appellee contends that it acquired an interest in the property superi- or to any bona fide purchaser at the completion of the sheriff’s sale (May 6, 1985). Under the Butlers’ theory, the transfer took place within one year of the filing of the bankruptcy petition on June 17, 1986, and could be avoided under section 548. Under the appellant’s theory, the transfer would not have taken place within the requisite time frame.
 

 In Pennsylvania, a bona fide purchaser is protected if he purchases without notice of prior interests,
 
 [5]
 
 including equitable interests.
 
 Long John Silver’s, Inc. v. Fiore,
 
 255 Pa.Super. 183, 386 A.2d 569, 573 (1978). Notice may be actual or constructive.
 
 Id.; see also
 
 28
 
 Pennsylvania Law Encyclopedia,
 
 Notice § 3 (1960). Constructive notice of a deed or a mortgage is given through recording.
 
 Malamed v. Sedelsky,
 
 367 Pa. 353, 80 A.2d 853, 856 (1951);
 
 see also
 
 24
 
 Pennsylvania Law Encyclopedia,
 
 Mortgages § 67 (1960). Thus, a mortgagee may protect its rights against third persons by recording.
 
 In re MacQuown,
 
 717 F.2d 859, 863 (3d Cir.1988) (under Pennsylvania law, a transfer of real property is good as against a subsequent bona fide purchaser, mortgagee or judgment holder when the deed is recorded).
 
 Owens v. Peters,
 
 126 Pa.Super. 501, 191 A. 399, 401 (1937) (the recording of a mortgage is notice to all persons who are visited with the duty of examining the records for conveyances and liens thereafter).
 

 The complaint in mortgage foreclosure in this case reveals that the Lomas mortgage was originally delivered by the Butlers to the United States through the Secretary of Housing and Urban Development on May 24, 1979.
 
 Appendix
 
 2a at 113. The mortgage was properly recorded that same day.
 
 Id.
 
 On February 22, 1984, the mortgage was assigned to Lomas.
 
 Id.
 
 at ¶ 4. The assignment was properly recorded on May 16, 1984.
 
 Id.
 
 Any subsequent purchaser from the Butlers would be on constructive notice of the Lomas mortgage. The recorded mortgage would be sufficient notice to the purchaser to inquire as to the status of the mortgage, i.e., whether it was in default or in foreclosure.
 
 See Lund v. Heinrich,
 
 410 Pa. 341, 189 A.2d 581, 585 (1963);
 
 Salvation Army in Pennsylvania, Inc. Trustees v. Lawson,
 
 293 Pa. 459, 143 A. 113, 114 (1928). The
 
 Salvation Army
 
 court stated:
 

 
 *1019
 
 Plaintiff’s title could be affected only with what they actually knew at the time of purchase; necessarily as to the latter, by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of the facts that might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds....
 

 Id.
 
 (citations omitted)
 
 (quoted in Lund,
 
 189 A.2d at 585).
 

 The Butlers correctly point out that the right to possession of the property does not pass to a Sheriffs sale purchaser until the Sheriff’s deed is executed and delivered.
 
 See
 
 Pa.R.Civ.P. 3181© & 3135;
 
 In re Rouse,
 
 48 B.R. 236, 240 (Bankr.E.D.Pa. 1985).
 
 [6]
 
 Thus, the Butlers argue, the debtors could transfer their interim right to possession and its subsidiary right to receive rents and profits at any time prior to delivery of the deed by the Sheriff. To the extent the possessory interest has any value, this is true. However, the purchaser at a Sheriff’s sale obtains vested equitable ownership of the property at the fall of the auctioneer’s hammer.
 
 In re Rouse, supra; Pennsylvania Company for Insurance on Lives v. Broad Street Hospital,
 
 354 Pa. 123, 47 A.2d 281, 283 (1946). For the reasons stated above, constructive notice of this equitable interest would arise through the record of the Lomas mortgage. Anyone attempting after the Sheriff’s sale to purchase any type of rights in the Butlers’ property would take subject to the prior equitable interest.
 
 Long John Silver’s Inc.,
 
 386 A.2d at 573. A purchaser of the equitable interest from the Butlers after the Sheriff’s sale would not be a bona fide purchaser.
 
 Cf. CSS Corp. v. Sheriff of Chester County,
 
 352 Pa.Super. 256, 507 A.2d 870 (1986)
 
 alloc. den.
 
 514 Pa. 627, 630, 522 A.2d 556, 559 (1987) (successful bidder on property at sheriff’s sale pursuant to foreclosure of one mortgage purchased
 
 all
 
 interest in property held by judgment debtor and thus later successful bidder on same property, offered later at same sale under foreclosure of another mortgage on that property, could not receive title to the property).
 

 We, therefore, find that the time of transfer under section 548(d) was the date of the Sheriff’s sale. No bona fide purchaser from the Butlers could thereafter obtain a right superior to that of Lomas. Moreover, this holding comports with the purpose underlying section 548(d) “to prevent fraudulent transfers from becoming impregnable to attack by keeping them secret until the limitation period has lapsed. In effect, a transfer is not made for the purposes of section 548(d)(1) until it becomes known or discoverable by the exercise of reasonable diligence.” 4
 
 Collier on Bankruptcy
 
 ¶ 548:08, p. 548-95. A foreclosure made upon a duly recorded mortgage is discoverable by virtue of the mortgage being recorded; it is not necessary for the Sheriff to perform the ministerial act of acknowledging and transferring the deed in order to make the fact of sale knowable.
 

 Because we find that the transfer, as defined in section 548(d), took place more than one year prior to the Butlers’ filing of their bankruptcy petition, we will reverse the judgment of the bankruptcy court and remand for further proceedings.
 

 [1]
 

 . Specifically, the debate is whether a foreclosure is in fact a "transfer” of property or simply the exercise of an inchoate right secured by the mortgagee at time of giving the mortgage.
 
 See
 
 Zinman, Houle & Weiss,
 
 Fraudulent Transfers According to Alden, Gross and Borow-itz; A Tale of Two Circuits,
 
 39 Bus.Law. 977, 995-999 (1984). Among the courts that agree that a foreclosure is a transfer, a subsidiary debate has emerged as to whether the transfer
 
 *1016
 
 occurs at the time of the sale or relates back to the time of perfection of the original mortgage deed.
 
 Compare Durrett v. Washington National Insurance Co.,
 
 621 F.2d 201, 204 (5th Cir.1980) (transfer is not final until the day of foreclosure sale)
 
 with Alsop v. Alaska (In re Alsop),
 
 14 B.R. 982 (Bankr.D.Alaska 1981),
 
 aff'd
 
 22 B.R. 1017 (D.Alaska 1982) (transfer relates back to execution of deed).
 
 See also
 
 Alden, Gross & Borow-itz,
 
 Real Property Foreclosure as Fraudulent Conveyance: Proposals for Solving the Durrett Problem,
 
 38 Bus.Law. 1605, 1608-1613); Zinman, Houle & Weiss,
 
 supra
 
 at 999-1001.
 

 [2]
 

 . We note that the Bankruptcy Court for the Eastern District of Pennsylvania has held that a foreclosure may be set aside as a constructively fraudulent transfer under Section 548 in appropriate cases.
 
 See, e.g., In re Corbett,
 
 80 B.R. 32 (E.D.Pa.1987);
 
 In re Jones,
 
 20 B.R. 988 (Bankr. E.D.Pa.1982). Indeed, this was the conclusion of the bankruptcy court below in this case.
 
 In re Butler,
 
 75 B.R. 528 (Bankr.E.D.Pa.1987).
 
 Collier on Bankruptcy,
 
 in surveying the cases, suggests that the predominant view of bankruptcy courts is that a foreclosure constitutes a transfer within the ambit of § 548(d)(1), 4
 
 Collier on Bankruptcy
 
 ¶ 548.08 & n. 10.
 

 [3]
 

 . Section 548(a) states:
 

 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
 

 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or
 

 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 

 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 

 (ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debt- or was an unreasonably small capital; or
 

 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor’s ability to pay as such debts matured.
 

 11 U.S.C. § 548. To compel avoidance of the sale, the Butlers relied on 11 U.S.C. §§ 522(h) and 522(g)(1). Together these sections allow the Butlers to stand in the shoes of a bankruptcy trustee for the purpose of avoiding the foreclosure sale.
 
 See In re Butler,
 
 75 B.R. at 530.
 

 [4]
 

 . To evidence this "trend” in favor of mortgagors the bankruptcy court cited two 1938 cases which establish that a sheriffs sale may be set aside:
 
 Peoples Pittsburgh Trust Co. v. Blickle,
 
 330 Pa. 398, 199 A. 213 (1938); and
 
 Home Owners’ Loan Corp. v. Eiden,
 
 329 Pa. 532, 198 A. 114 (1938). The court also cites 1974 and 1983 legislation: Act No. 6 of 1974, 41 P.S. § 101
 
 et seq.
 
 (mortgagors accorded an unwaivable right to cure mortgage delinquencies); Act 91 of 1983, 35 P.S. § 1680.401c.
 
 etseq.
 
 (state loans are provided to mortgagors who are faced with foreclosure).
 

 [5]
 

 . This rule is embodied in the Pennsylvania Recording Statute, 21
 
 Pa.State.Ann.
 
 § 351 (Pur-don 1955). The statute provides in pertinent part:
 

 § 351. Failure to record conveyance ...
 
 Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary’s office of the county in which the lands, tenements, or here-ditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded,
 
 as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.
 

 Id.
 
 (emphasis added).
 

 [6]
 

 . In Pennsylvania, any party in interest may petition to set aside the Sheriff’s sale; the petition must be filed within ten days following the sale.
 
 Pa.R.Civ.P.
 
 3181(h) & 3132. Only after the expiration of the ten day period, if no petition is made, will the Sheriff execute and deliver the deed to the purchaser.
 
 Pa.R.Civ.P.
 
 3181(j) & 3135. The effective date of the deed is then the date of the Sheriffs sale.
 
 Pennsylvania Company for the Insurances on Lives v. Broad Street Hospital,
 
 354 Pa. 123, 47 A.2d 281 (1946).