In re Mark DAVIS, Debtor.

Mark Davis, Plaintiff,

v.

SunTrust Mortgage, Inc.; James and El-
len Paine; Sheriff's Office of Alleghe-
ny County, Pennsylvania, Defendants.

In re Mark Davis, Debtor.

Mark Davis, Plaintiff,

v.

SunTrust Mortgage, Inc.; James and El-
len Paine; Sheriff's Office of Alleghe-
ny County, Pennsylvania; Peter De-
Fazio, Sheriff; and LaSalle National
Bank, Defendants.

In re Mark Davis, Debtor.

James and Ellen Paine, Movants,

v.

Mark Davis, [1] Respondent.

Bankruptcy No. 01–21959 JKF.
Adversary Nos. 01–2161, 01–2253.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 9, 2002.

---

1. The Chapter 13 Trustee was originally named as a respondent in the motion for relief from stay at Motion No. FJW–1. Howev-er, the case was converted to Chapter 11 and the Chapter 13 Trustee is no longer a party.

Donald R. Calaiaro, Calaiaro & Corbett, PC, Pittsburgh, PA, for Debtor.

Gerri L. Sperling, Frederick J. Wolfe, Springer, Bush & Perry, PC, Pittsburgh, PA, for James and Ellen Paine.

Jeanette Ho, John A. Bacharach, Pittsburgh, PA, for Allegheny County Sheriff's Office and Peter DeFazio, Sheriff.

Andrew Stone, Pittsburgh, PA, for Sun-Trust Mortgage.

Scott Hare, Bartony & Hare, Pittsburgh, PA, for LaSalle National Bank.

### MEMORANDUM OPINION [2]

JUDITH K. FITZGERALD, Chief Judge.

Before the court are cross motions for summary judgment on an amended complaint filed by Debtor to avoid a sheriff's sale on the basis of 11 U.S.C. § 547 and § 548 and for turnover of funds and damages (Adversary No. 01–2253). The Sheriff of Allegheny County, Pennsylvania, moved to dismiss this adversary as did SunTrust Mortgage. James and Ellen Paine, the successful bidders at the sheriff's sale that led to these adversary proceedings and a motion for relief from stay, filed a motion to dismiss Counts I, III and IV of Debtor's amended complaint. The Paines also filed a motion for summary judgment in which SunTrust Mortgage and LaSalle National Bank joined. Debtor filed a motion for summary judgment as well.

There is a related action filed at Adversary No. 01–2161 which was commenced as a state court action for rescission of the sheriff's sale that Debtor removed to this court. The state court action seeks essentially the same relief as that sought by Debtor in Adversary No. 01–2253. The Paines joined in the sheriff's motion to remand and to abstain at Adversary No. 01–2161. At Motion No. FJW–1 the Paines seek relief from the automatic stay to pursue their claim of ownership of the property.

There are no facts in dispute that prohibit us from ruling on the pending matters. We find that Debtor is not entitled to have the sheriff's sale set aside inas-

---

**2.** This Memorandum Opinion constitutes our findings of fact and conclusions of law. The court's jurisdiction was not at issue.

much as he lost all· but bare legal title to the property and a mere temporary possessory interest when the hammer fell at the sheriff's sale held on February 5, 2001. Accordingly, we will grant the sheriff's motion to dismiss the amended complaint at adversary No. 01–2253[3] and deny his motion, in which the Paines joined, to remand and to abstain with respect to Adversary No. 01–2161. We will grant Sun-Trust Mortgage's motion for summary judgment at Adversary No. 01–2253 inasmuch as the amended complaint states no allegations with respect to it, although SunTrust Mortgage is a named defendant. We will grant the Paines' motion for summary judgment on all counts at Adversary No. 01–2253. We find that the Paines' motion to dismiss Counts I, III, and IV and SunTrust's motion to dismiss are moot. We will grant LaSalle National Bank's motion for summary judgment on all counts (it joined in the Paines' motion for summary judgment) inasmuch as the amended complaint states no allegations with respect to it. Debtor's motion for summary judgment will be denied. We will grant the Paines' motion for relief from stay filed at Motion No. FJW–1 at

Bankruptcy No. 01–21959–JKF. The facts are as follows.

A sheriff's sale[4] of Debtor's property was originally scheduled for January 2, 2001, but Debtor filed a chapter 13 bankruptcy petition on December 29, 2000, at Bankruptcy No. 00–20310, thereby staying the sale. Because of the December 2000 bankruptcy filing, the sheriff's sale was continued by public announcement on January 2 to the regularly scheduled sheriff's sale to be held on February 5, 2001, in compliance with Pa.R.Civ.P. 3129.3(b).[5] In the meantime, because Debtor failed to timely complete his bankruptcy filing at Bankruptcy No. 00–20310, that case was dismissed on January 29, 2001. At the February 5, 2001, sheriff's sale, the property was sold to a third party, Vikas Jain, for $291,000. However, Vikas Jain notified the Sheriff on February 6 that he would not complete the sale. Without further notice to Debtor or court order, another sale was held on February 16, 2001, at which time James and Ellen Paine purchased the property for $266,000.00. The sheriff's deed was delivered to the Paines within five days of the sale,[6] *i.e.*, on or

3. The Amended Complaint filed at Adversary No. 01–2253 does not articulate, in all respects, what relief is sought against which entity.

4. Debtor's Affidavit in Support of Motion for Summary Judgment, Adv. No. 01–2253, Dkt. # 37, states that SunTrust is the first mortgagee and $25,000 was needed to cure the arrears. LaSalle held the second mortgage for $165,000 and Brenner Leasing held a third mortgage of $100,000. Brenner Leasing is not a named party in any of the matters before us.

5. Rule 3129.3(b) provides:
 If the sale is stayed, continued, postponed or adjourned to a date certain within one hundred days of the scheduled sale, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place originally fixed for the

sale, no new notice shall be required, but there may be only one such stay, continuance, postponement or adjournment without new notice.

6. Debtor asserts that under Pa.R.Civ.P. 3136(d) and *Concord–Liberty Savings & Loan Assoc. v. NTC Properties, Inc.*, 454 Pa. 472, 312 A.2d 4 (1973), he had ten days from execution of the sheriff's deed or ten days from the date of the sheriff's schedule of distribution to file objections to the sale. Rule 3136(d) provides:
 The sheriff shall distribute the proceeds of sale in accordance with the proposed schedule of distribution, unless written exceptions are filed with the sheriff not later than ten (10) days after the filing of the proposed schedule.
 Rule 3135(a) provides:
 When real property is sold in execution and no petition to set aside the sale has been

before February 21, 2001, and was recorded on February 21, 2001.

Ten days after the February 16, 2001, sale, on or about February 26, 2001, Debtor filed a motion to reopen the chapter 13 at Bankruptcy No. 00–20310. This motion was not pursued and Debtor thereafter filed the instant case on March 2, 2001. The case was later converted to a chapter 11. Twelve days after the sale, on or about February 28, 2001, Debtor filed a "Complaint in Rescission" in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging *inter alia*, that he did not receive notice of the February 16 sale and that the postponement of the January 2 sale to February 5 constituted a "continuation of the execution process" in violation of the automatic stay of 11 U.S.C. § 362. However, as of the February 5 sale, and thereafter on any relevant date,[7] there was no bankruptcy. Debtor admits that the deed was recorded on February 21. *See* Answer to Motion for Relief from Automatic Stay at Exhibit A, Complaint in Rescission, ¶ 29, Bankruptcy No. 01–21959–JKF, Dkt. # 10. Debtor also admits the complaint seeking rescission of the sale was filed in state court on February 28. Complaint to Remove Pending Litigation to Bankruptcy Court, Adversary No. 01–2161, at ¶ 11. Under Pennsylvania law the sale could no longer be set aside. *See* note 5 *supra*. Debtor filed a complaint at Adversary No. 01–2161 to remove the state court action to this court. The Paines answered the complaint and joined the sheriff's motion to remand and abstain from hearing the state court action that had been removed.

Debtor filed an amended complaint at Adversary No. 01–2253 to set the sale aside, alleging that it was not a regularly conducted sale (Count I), the sale was not for reasonably equivalent value (Count II), the $29,100 deposit by the reneging buyer, Vikas Jain, should have been held by the sheriff and not returned to Jain but turned over to Debtor (Count III), and that, by rescheduling the sheriff's sale a second time without new notice to Debtor, Debtor was denied due process. In Count IV Debtor also asserts that because the rescheduling was done by the sheriff's employees, the sheriff is liable for damages to Debtor in the amount of $144,000, the difference between the sale price and what Debtor alleges to be the fair market value

filed, the sheriff, at the expiration of ten days after the filing of the schedule of distribution, shall execute and acknowledge .. a deed . . . .

However, the court in *Concord–Liberty* also cited Pa.R.Civ.P. 3132 which says that before delivery of the deed the court may set aside the sale. Here, the deed was delivered before Debtor sought to set the sale aside and, therefore, under Pennsylvania case law, the sale could not be set aside. Even if the delivery of the deed five days after the sale was improper, Debtor cannot challenge the transfer as his rights to the property, except his bare legal title and a possessory interest of little or not value, were terminated at the time the hammer fell on February 5th. The February 5 sale was conducted in accordance with Pennsylvania law. *See* discussion below.

7. Relevant dates are the February 5 sale, the February 16 sale, February 21, the date the deed was recorded, and February 28, the date Debtor's state court rescission action was filed. *See* Exhibit 1 to Exhibit 2 (Complaint in Ejectment filed in Court of Common Pleas of Allegheny County, Pennsylvania), Motion for Relief from Automatic Stay, Bankruptcy No. 01–21959–JKF1, Dkt. # 10. Part of Exhibit 2 to Exhibit 2 of the Motion for Relief from Automatic Stay is a letter dated February 23, 2001, to Debtor from Mrs. Paine captioned "Notice of Demand of Possession" stating that the deed was recorded on February 22, 2001. However, the Sheriff's Deed at Exhibit 1 to Exhibit 2 to the Motion for Relief from Automatic Stay shows a date stamp of February 21, 2001, containing the legend "I certify this document recorded Allegheny County, PA Michael A. Della Vecchia."

of the property. Count IV also alleges that the sheriff and his employees were acting under color of state law and that the rescheduling of the sale to February 16, 2001, denied Debtor due process. Debtor seeks counsel fees from the sheriff.

At the hearing on April 12, Debtor stated that if the court ruled against him on Counts I and II, Counts III and IV should be held in abeyance until an appeal of the ruling on Counts I and II was concluded. However, Debtor admitted that he had not stated a claim under Count IV. We find no need to hold Count III in abeyance and will address it.

*Motion to Remand and/or Abstain at Adversary No. 01–2161*

At Adversary No. 01–2161, Debtor removed his state court action to set aside the sale, at Allegheny Court of Common Pleas No. GD–01–3889, to this court. The sheriff moved to remand and ask that we abstain from deciding the rescission action. The Paines joined in that motion.

 When determining whether to remand a removed action the bankruptcy court must do more than weigh inconvenience to the parties and defer to the plaintiff's choice of forum. The following factors are considered:

 (1) the effect on the efficient administration of the bankruptcy estate;

 (2) the extent to which issues of state law predominate;

 (3) the difficulty or unsettled nature of the applicable state law;

 (4) comity;

 (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

 (6) the existence of a right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.

Although the removed state court action is governed purely by state law, the complaint to set aside the sale filed at Adversary No. 01–2253 essentially requests the same relief. State law with respect to the issue of whether the sheriff's sale must be set aside is settled enough that this court is able to make a reasonable assessment of how the state court would decide the issue. Furthermore, the action at Adversary No. 01–2253 raises questions of bankruptcy law in addition to the state law·issues. With respect to the last two factors, there is no demand for jury trial and, since there are no facts in dispute, the matter is ready for disposition. Furthermore, there is no prejudice to the involuntarily removed defendants inasmuch as the relief they seek at Adversary No. 01–2253 is being granted. With respect to Adversary No. 01–2161 we will not remand or abstain but will enter judgment against Debtor in that adversary.

*Avoidability of Sheriff's Sale at Adversary No. 01–2253*

 Debtor asserts that the sheriff's sale was not regularly conducted and therefore can be set aside under *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556, rehearing denied 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994). In Debtor's version of events, neither he nor his counsel attended the January 2 sale but thereafter an employee of Debtor's former attorney inquired as to whether the original sale set for January 2 had been rescheduled and was told either that it was rescheduled for the March, 2002, sheriff's sale date or that it was not rescheduled for February 5.[8]

---

**8.** In his Affidavit in Support of Motion for Summary Judgment, Debtor states that an

employee of his former counsel went to the sheriff's office and reported "that the counter

This information was incorrect and Debtor contends that, therefore, the continuance violated the automatic stay of the Bankruptcy Code and the failure to renotice the sale requires that the sale be set aside.

With respect to continuance of the sale from January 2 to February 5, the Court of Appeals for the Third Circuit in *Taylor v. Slick*, 178 F.3d 698 (3d Cir.1999), addressed the issue of continuance of a sheriff's sale by public announcement when bankruptcy intervenes. In *Taylor v. Slick*, the debtor filed bankruptcy before a sheriff's sale of his property and did not attend the sale which, due to the bankruptcy, was continued to another date by public announcement at the first scheduled date. The Court of Appeals held that "continuance of a sheriff's sale in accordance with state law procedures during the pendency of an automatic stay does not violate § 362(a)(1)". 178 F.3d at 701. In the matter before us the February 5 sale was announced at the sale on January 2. The continuance comported with Pa.R.Civ.P. 3129.3(b). Under *Taylor v. Slick*, there was no violation of the stay. With respect to both the February 5 and the February 16 sale, there is no issue regarding § 362 inasmuch as no bankruptcy case existed at that time and the automatic stay was not in effect.

 Debtor also asserts that the February 16 sale was not conducted in accordance with Pennsylvania law because it was not renoticed or conducted by virtue of a court order authorizing it and is therefore avoidable in this bankruptcy case. Pa.R.Civ.P. 3129.3(b) allows one continuance to a date within 100 days of the scheduled sale which date is publicly announced at the scheduled sale. Debtor contends that the February 16 sale could be held only upon new notice or court order. The explanatory comments to Pa. R.Civ.P. 3129.3 state that

> there are two exceptions to the requirement of new notice: (1) continuance to a date certain under the circumstances contained in subdivision (b), and (2) a special order of court dispensing with the requirement of new notice. The second exception is new to the rule and gives the court discretion to allow postponement of the sale without new notice in appropriate cases.

In light of the facts of this case and the explanatory comment to Rule 3129.3, we conclude that the sale on February 16 was not the result of a continuance that required a court order. In addition, case law that establishes that Debtor lost his equitable interest and the right to redeem the property when the hammer fell on February 5 leads us to conclude that the sale was not invalid under Rule 3129.3 and that, in fact, Rule 3129.3 does not apply to a resale of property that had previously been sold at sheriff's sale to a defaulting purchaser. After it was known on February 6 that the February 5 sale would not be consummated, Philadelphia counsel for the lender asked the Sheriff of Allegheny County, by letter dated February 7, to put the property up for sale for February 16. *See* Plaintiff's Motion for Summary Judgment, Adv. No. 01–2253, Dkt. #35, at Exhibit D. This was not a Rule 3129.3 continuance and, therefore, no court order was needed and, even if an order was needed, we do not need to resolve the

person at the Sheriff's office told her that 302 Crystal Lake Lane was not on the February 5, 2001, sale list." Adv. No. 01–2253, Dkt. #37, at 1. In his Motion for Summary Judgment, Debtor avers that "[b]etween January 2, 2001, and February 5, 2001, an employee of the law firm went to the Sheriff's Office and inquired about the sale date. She was told the sale was rescheduled to March, 2001." Plaintiff's Motion for Summary Judgment, Adv. No. 01–2253 at ¶ 5.

question of whether the absence of an order permitting the sale on February 16 invalidates the sale because, notwithstanding Rule 3129.3, Pennsylvania case law holds that once the hammer fell at the February 5 sale, Debtor lost all equitable and beneficial interest in the property and held only bare legal title.[9] As of that moment, Debtor no longer had the right to redeem his property and has no standing now to pursue the issue. Under Pennsylvania law, the mortgagor loses the right to redeem once the hammer falls. Pennsylvania law provides that "the sheriff's sale takes place when the hammer falls." *Pennsylvania Co. for Insurances on Lives v. Broad St. Hospital,* 354 Pa. 123, 47 A.2d 281, 283 (1946). That is, when the sheriff accepts the bid, the purchaser acquires a right to a deed on complying with the terms of sale and assumes the obligation of complying with those terms. In other words, the purchaser acquires an equitable interest which becomes a complete title on complying with the terms of the sale. The

mortgagor loses his equitable interest and loses the right to redeem.[10] The court also noted that if it "had then been of opinion that a sheriff's sale did not foreclose the equity, but that acknowledgment and delivery of a deed were required ... it would only have been necessary for the debtor, the creditor and the intending bidder ... to get together, hand the necessary amount to the creditor and so end the proceeding and thereby deprive the purchaser of his purchase." 47 A.2d at 286. This is still the law in Pennsylvania. *See In re Pulcini,* 261 B.R. 836, 840 (Bankr. W.D.Pa.2001). In *Pulcini* the court concluded that under Pennsylvania law when the hammer falls at a sheriff's sale the purchaser "acquires a vested equitable interest in the property", *id.,* quoting *Butler v. Lomas and Nettleton Company,* 862 F.2d 1015, 1019 (3d Cir.1988). The deed, delivered when the terms of the sale have been fully complied with, is merely evidence of the title that the purchaser re-

**9.** Debtor also held a temporary possessory interest of little if any economic value. *See Butler v. Lomas and Nettleton Company,* 862 F.2d 1015, 1018 (3d Cir.1988), and text *infra.*

**10.** Section 404 of title 41 of the Pennsylvania Statutes provides:

"(a) Notwithstanding the provisions of any other law, after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration, if any, by tendering the amount or performance specified in subsection (b) of this section."

(b) To cure a default under this section, a residential mortgage debtor shall:

(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default

and the exercise of an acceleration clause, if any;

(2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;

(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.

(4) Pay any reasonable late penalty, if provided for in the security document.

(c) Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred.

41 P.S. § 404. The record is devoid of any indication that Debtor made any attempt to redeem his property at any time before the February 5th sale at which time he lost his equitable interest. Inasmuch as his failure to appear on February 5th does not invalidate that sale, *see Taylor v. Slick, supra.*

ceived when the hammer fell. The title received at the sale is inchoate; upon delivery the deed relates back to the date of the sale. *Pulcini,* 261 B.R. at 841.

In *Butler v. Lomas and Nettleton Company,* 862 F.2d 1015, 1019 (3d Cir.1988), it was argued that, even after the hammer falls at a sheriff's sale, the debtors could transfer their possessory interest provided they did so before delivery of the deed. The court agreed that this was so, to the extent the possessory interest has any value. However, the court was quick to point out that the purchaser nonetheless "obtains vested equitable ownership of the property at the fall of the auctioneer's hammer." *Butler,* 862 F.2d at 1018, citing *In re Rouse,* 48 B.R. 236 (Bankr.E.D.Pa. 1985). "Anyone attempting after the Sheriff's sale to purchase any type of rights in the ... property would take subject to the prior equitable interest." 862 F.2d at 113. These conclusions arise from the fact that Pennsylvania is a "title theory" state.

Bankruptcy courts are required "to take the necessary steps to 'ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.'" *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 37 (3d Cir.1993), quoting *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *Commerce Bank v. Mountain View* discusses two approaches with respect to the effect of a mortgage on the mortgagee's and mortgagor's rights: the "title theory" and the "lien theory". Under the title theory, the mortgagor is deemed to have transferred the property to the mortgagee in fee simple with the proviso that if the mortgagor repays the debt on time, the mortgagee will reconvey the property. Under the lien theory, the mortgage simply creates a lien on the property, the mortgagee holds only legal title, and the mortgagor remains the actual owner until the equity of redemption is terminated by foreclosure. The Court of Appeals for the Third Circuit pointed out that "[a] significant difference between lien and title states is" the creditor's right, in title theory states, to enter the property upon default and collect the rents. 5 F.3d at 37–38. The Court of Appeals noted that Pennsylvania is a title theory state and so the mortgage is treated as a fee simple conveyance to the mortgagee, at least as between the mortgagor and mortgagee. *Id.* at 38. In this case the fall of the sheriff's hammer at the February 5 sale acted to terminate Debtor's right to pay the mortgage and claim the title. Even though Vikas Jain failed to pay the balance of the purchase price, and even before February 16 when the sale was conducted at the request of the mortgagee which held the fee interest, Debtor had no further equitable interest in the property and the mortgagee had the right to claim the legal title if the purchaser defaulted.

Based on Pennsylvania law as discussed in *Commerce Bank v. Mountain View,* we conclude that when the hammer fell at the first sale on February 5, regardless of whether or not the initial purchaser completed the deal, the Debtor lost all but his possessory interest and bare legal title in the property. The effect of the February 5 sale was the foreclosure of Debtor's interest and Debtor's loss of his right to redeem. At that point, it was the mortgagee's right to enter the property or to expose it to another sale because it held the fee simple.

When the second sale occurred on February 16, there was no bankruptcy and Debtor no longer had an equitable interest in the property. When Debtor filed the second bankruptcy on March 2, 2001, he

held no interest that could pass to the bankruptcy estate because the deed to the Paines had been recorded on February 21, 2001.

*In re Pulcini,* 261 B.R. 836, 840 (Bankr. W.D.Pa.2001), referred to above, further stated:

> We recognize that at least two bankruptcy courts have held that, under Pennsylvania law, legal title to property purchased at a sheriff's sale does not pass to the purchaser until acknowledgment and delivery of the sheriff's deed occurs. *In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985); *Russell v. Equibank (Matter of Russell),* 8 B.R. 342, 345 (Bankr.W.D.Pa.1980). As authority for this proposition, *In re Rouse* cites to *Russell,* which in turn cites to *Pennsylvania Co. for Insurances,* 354 Pa. at 129, 47 A.2d at 281, as authority for the proposition. We disagree. Our review of *Pennsylvania Co. for Insurances* indicates no support for this proposition.

The outcome of this matter would be the same even if debtors still had legal title to the property as of the commencement of their bankruptcy case. When a purchaser acquires an equitable interest in real property at a sheriff's sale but legal title remains with a debtor when the debtor files a bankruptcy petition, cause exists pursuant to § 362(d) of the Bankruptcy Code to lift the automatic stay to permit the purchaser to obtain legal title. *Bundy v. Donovan (In re*

*Donovan),* 183 B.R. 700, 702 (Bankr. W.D.Pa.1995); *In re Golden,* 190 B.R. 52, 58 (Bankr.W.D.Pa.1995).

Even if post-petition acknowledgment and delivery of the sheriff's deed had violated the automatic stay, this would pose no obstacle to granting CMB relief from stay on a nunc pro tunc basis. As a general matter, acts performed in violation of the automatic stay are void ab initio. *Maritime Electric Company, Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206–07 (3d Cir.1991). This general principle is not, however, without exception. Subsection 362(d) of the Bankruptcy Code authorizes the bankruptcy court to annul the automatic stay and to grant relief from stay retroactively. Annulment of the automatic stay effectively makes acts committed in violation of the automatic stay voidable rather than void ab initio. *In re Siciliano,* 13 F.3d 748, 750–51 (3d Cir.1994).

261 B.R. at 841–42.[11] We conclude that the sale to the Paines could not be set aside under state law and, therefore, cannot be set aside in this bankruptcy case. Debtor has not stated a claim in Count I.

■ Because Debtor had no interest in the property on the date he filed this bankruptcy petition, he has no standing to assert that reasonably equivalent value was not received at the February 16 sale. Accordingly, under *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757,

---

11. We recognize that the court in *Russell,* cited in *Pulcini,* stated that "A sheriff's deed therefore becomes perfected in Pennsylvania at the time of acknowledgment and delivery." Pursuant to Rule 3135 of the Pa.R.C.P., however, the sheriff may not deliver the deed until 'the expiration of ten days after the filing of the schedule of distribution, if no petition has been filed to set aside the sale." Moreover, Pa.R.C.P. No. 3132 provides that the court may set aside the sale for "proper cause" during this crucial ten-day period, upon peti-

tion of any party in interest." *Russell,* 8 B.R. at 345. *Russell,* however, was an action under § 549 of the Bankruptcy Code and the court found in that case that the purchaser was not entitled to the protections of § 549(c) because her title was not perfected when the debtors petitioned the state court to set aside the sheriff's sale. *Id.* at 344. In the matter before us, the deed was recorded before Debtor petitioned the state court to set aside the sale and before he filed the instant bankruptcy case.

128 L.Ed.2d 556 (1994), the purchase price constitutes "reasonably equivalent value" for purposes of § 548 and the sale cannot be set aside. In *BFP* the Supreme Court said:

Market value cannot be the criterion of equivalence in the foreclosure-sale context. The language of § 548(a)(2)(A) ("received less than a reasonably equivalent value in exchange") requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale. An appraiser's reconstruction of "fair market value" could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state-prescribed foreclosure. But property that must be sold within those strictures is simply worth less. No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques. And it is no more realistic to ignore that characteristic of the property (the fact that state foreclosure law permits the mortgagee to sell it at forced sale) than it is to ignore other price-affecting characteristics (such as the fact that state zoning law permits the owner of the neighboring lot to open a gas station).

511 U.S. at 538–39, 114 S.Ct. 1757.

Further, the Court said:

...we decline to read the phrase "reasonably equivalent value" in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either "fair market value" or "fair foreclosure price" (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

511 U.S. at 545, 114 S.Ct. 1757.

■■■ We also find that the allegation that the sale must be set aside as an avoidable preference is without merit. Although the amended complaint pleads some of the elements of § 547, it does not allege that the transfer resulted in a creditor receiving more than it would have in a chapter 7 or that the transfer was to or for a creditor's benefit. Furthermore, neither the Paines (the purchasers) nor the sheriff were creditors of Debtor so § 547 is inapplicable as to them. As to the bank defendants, again, the amended complaint is deficient as stated.[12] Therefore, judgment will be entered in favor of all defendants with respect to the § 547 allegations. Debtor failed to state a cause of action against any defendant in Count II.

*Damages*

■■■ Because the sale is not avoidable, the price received represented reasonably equivalent value. Two sales were conducted, one on February 5 and the other on February 16. Neither brought the $400,000 value Debtor asserts the property is worth. The amount the Paines paid, $266,000, although less than the price offered on February 5 of $291,000, is significantly less than Debtor's estimated value. In addition, on the basis of *BFP v. Resolution Trust Corp.*, *supra*, we find that Debtor is not entitled to the difference between the sale price and the appraisal price.

---

12. Debtor does not contend that the banks received more than the amounts owed on their secured claims through the sale.

*Turnover*

■■■■■ In Count III Debtor asks us to order the sheriff to turn over the $29,100 received as a deposit from Vikas Jain at the February 5 sale. A turnover count will not lie under the circumstances of this case

because prepetition the sheriff returned Jain's deposit.[13] Thus, on the date the bankruptcy was filed, the sheriff was not a custodian of property of the estate nor did he have possession or control of estate property. *See* 11 U.S.C. § 542.[14] There

---

13. Exhibit 3 to the Paines' Brief in Support of Motion for Summary Judgment, Adversary No. 01–2253, Dkt. # 32, is a page from the sheriff's docket. *See* Brief in Support of Motion for Summary Judgment at 8. Handwritten on the docket is the notation "Down payment $29,100.00 to Vikas, Jan [sic] 2–16–01."

14. In *In re Townsville*, 268 B.R. 95 (Bankr. E.D.Pa.2001), the debtor's second bankruptcy case was dismissed on July 3, 2000. Eight days later her residence was sold at a sheriff's sale. On August 4, 2000, the debtor filed a third bankruptcy petition. At that time, the buyers at the sheriff's sale had not paid the balance owed and the sheriff had not issued, recorded, or delivered the deed. The debtor sought to reject "any executory contract for the purchase of her home ... that may have been created by the sheriff sale which took place on July 11, 2000." 268 B.R. at 102–03. The court rejected the argument that the sheriff's sale was an executory contract, finding that under Pennsylvania law "the duty of a purchaser at a Sheriff's Sale is to the sheriff alone." *Id.* at 109, citing *Zwinger v. Keim*, 260 Pa. 62, 103 A. 504 (1918)("Whether the sheriff will hold the purchaser to the strict compliance of the conditions of the sale [*i.e.*, extension of time to complete payment of the purchase price] or not is a matter between him and the purchaser, of which no one else can complain and least of all the defendant [mortgagor] whose duty it was to pay the judgment"). *Accord Calhoun v. Commercial Credit Corp.*, 151 Pa.Super. 589, 30 A.2d 735 (1943); *East Girard Savings and Loan Association v. Powell*, 11 Pa. D. & C.2d 289, 291–92, 1958 WL 5061 (Phila.Cty.1956)("Our courts have consistently held that the resale of a property after the purchaser has failed to comply with the terms of his bid, is a matter within the discretion of the sheriff: *Acker v. Snyder*, 250 Pa. 57, 95 A. 325 (1915); *Hartman v. Pemberton*, 24 Pa.Super. 222, 227 (1903)"). "The liability of a defaulting purchaser for the loss on a resale of the property is to the sheriff, and the action to enforce it must be in his name." 268 B.R. at 109, quoting *Smith v. Wilson*, 152 Pa. 552, 25 A.

601, 602 (1893). The court in *Townsville*, citing *Federal Deposit Insurance Corporation v. Dye*, 642 F.2d 837 (5th Cir.1981), recognized that contrary authority exists. For example, " 'Georgia law treats the high bid at a foreclosure sale as forming a contract; the bidder contracts with the debtor to purchase the property at the bid price.' " *Townsville*, 268 B.R. at 109, quoting *FDIC v. Dye*, 642 F.2d at 844. However, the court found that Pennsylvania law is to the contrary. We find the Pennsylvania case authorities cited above to be persuasive and accurate statements of Pennsylvania law.

Nonetheless, and notwithstanding the inapplicability of § 542, by returning Jain's deposit the sheriff violated a condition of the sale as advertised. The notice of sale published in the Pittsburgh Legal Journal with respect to the January 2, 2001, sale stated:

CONDITIONS OF SALE

Successful bidder will pay full amount of bid in CASH, CERTIFIED CHECK OR CASHIER'S CHECK at time of sale, otherwise the property will be resold; provided that if the sale is made on Tuesday, January 2, 2001 he may pay ten (10 per cent of purchasing price but not less than $75), in CASH, CERTIFIED CHECK OR CASHIER'S CHECK, at time of sale and the balance in CASH, CERTIFIED CHECK OR CASHIER'S CHECK on or before Friday, January 5, 2001, at 10:00 o'clock A.M., at which time the property will be resold if the balance is not paid; and in such case all moneys paid in at original sale shall be applied to any deficiency in the price of which property is resold; and provided further that if successful bidder is the plaintiff in the execution he shall pay full amount of bid ON OR BEFORE THE FIRST MONDAY OF THE FOLLOWING MONTH. OTHERWISE WRIT WILL BE RETURNED MARKED "REAL ESTATE UNSOLD" and all moneys advanced by plaintiff will be applied as required by Common Pleas Court Rule 32.

Exhibit A to Sheriff's Answer to Court of Common Pleas Complaint, Adversary No. 01–

was no estate property in his possession, custody or control that can be turned over. Even if a turnover action would lie, it would not be against the sheriff inasmuch as on the date of the filing of the bankruptcy he no longer retained any funds.

*Relief from Stay*

In light of the foregoing, the Paines shall be granted relief from stay to the extent that it may be necessary to enforce their rights as the owners of the property.

2161, Dkt. # 7. *See also Schmidt v. Ramsay,* 6 Pa. D. 584, 1897 WL 3514 (Court of Common Pleas, Schuylkill Cty., Pa. 1897)(in situation where second public sale brought in less money than first sale and down payment was stipulated in agreement as liquidated damages, there can be no return of down payment). *See Schmidt v. Ramsay, supra. See also Western Sav. Fund Society of Philadelphia v. Devlin,* 61 Pa. D. & C.2d 702, 1973 WL 15128 (Court of Common Pleas, Chester Cty., Pa.1973)(when proceeds of sale are more than enough to satisfy all liens and costs of sale, the debtor is entitled to the surplus, if any). *"Appeal of Wright,* 25 Pa. 373 (1855), is authority for the proposition that where a sheriff's vendee pays part of the purchase money, and on default of payment of the residue, a resale is had, if the loss on the resale exceeds the sum so paid by the first vendee, the same may be distributed as part of the proceeds of the sale." *Devlin,* 61 Pa. D. & C.2d at 706, 1973 WL 15128 at *3. Return of the deposit to Vikas Jain was not appropriate unless, after distribution of the sale proceeds of the February 16 sale, there was no deficiency on the debt Debtor owed to the mortgagee plus the costs of sale. Such was not the case and there was a deficiency here. However, whether or not there was deficiency in this case, no turnover action lies against the sheriff inasmuch as on the date of the filing of the bankruptcy he held no estate property.