### In re FIBSA FORWARDING, INC.

### No. Civ.A.–L–99–43.

United States District Court,
S.D. Texas,
Laredo Division.

Sept. 15, 1999.

## MEMORANDUM AND ORDER

ELLISON, District Judge.

This is an appeal from the Bankruptcy Court's grant of plaintiff/appellee's motion for summary judgment. Both parties agree that the only issue on appeal is whether 11 U.S.C. § 547 can be invoked to avoid as a preference the foreclosure sale initiated by appellee's predecessor in title.

The parties further agree that, in determining whether the foreclosure sale constituted a preference, the only points in contention are 1) whether the transfer was "made while the debtor was insolvent," 11 U.S.C. § 547(b)(3); and 2) whether the transfer enabled the

... creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [*i.e.*, 11 U.S.C.];

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

This court reviews issues of law under a de novo standard, and issues of fact under a clearly erroneous standard. *In re Southmark*, 49 F.3d 1111, 1114 (5th Cir. 1995); *In re Anderson*, 936 F.2d 199, 202 (5th Cir.1991).

Appellant raises only issues of law. In particular, appellant argues that, even though the debtor was solvent prior to the transfer in question, the fact that the debtor became insolvent as a result of the transfer satisfied 11 U.S.C. § 547(b)(3). The appellant further argues that, because the foreclosing creditor later sold the prop-

erty for more money than it bid at foreclosure, the creditor comes within the terms of § 547(b)(5). To prevail on its appeal, defendant/appellant must prevail under both § 547(b)(3) and (b)(5).[1]

For the reasons stated in the Bankruptcy Court's Findings of Fact and Conclusions of Law, and for the additional reasons set forth in this Memorandum, the decision of the Bankruptcy Court is AFFIRMED.

## I. THE MEANING OF "INSOLVENT" WITHIN § 547

Section 547 itself contains definitions of certain terms that are used within the section. 11 U.S.C. § 547(a). "Insolvent" is not one of them. Rather, reference must be made to the Bankruptcy Code's general definition section. 11 U.S.C. § 101. Subsection (32) states that

... insolvent means—

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C. § 101 32(A).

This definition of "insolvent" speaks to the first issue that divides the parties. Specifically, because the parties agree that the debtor was solvent before the alleged preferential transfer was made, the precise issue becomes whether the property transferred in the challenged transaction should or should not be included among the debtor's assets in determining whether the debtor was solvent. If the property should be included, then the debtor was solvent and the transfer cannot be considered a preference. At least by omission,

1. The parties agree that the other three prongs of § 547 are clearly satisfied.

the § 101(32)(A) definition of "insolvent" provides the answer: property previously transferred as a fraudulent conveyance should not be considered among the debtor's assets for purposes of determining solvency. Nothing is said, however, about property previously transferred as a preference. The inescapable inference is that property that has been transferred as part of a preferential transfer *is* included in a debtor's estate for purposes of determining solvency. On this analysis, therefore, the debtor in this instance was solvent for purposes of the § 547 analysis and the transfer cannot be a preference.

This reading is reenforced by the language of the subsequent section of the Bankruptcy Code. 11 U.S.C. § 548. The pertinent language of § 548 focuses on transfers made with intent to defraud or for less than reasonably equivalent value if the debtor "was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer ..." 11 U.S.C. § 548(a)(2)(B). Clearly, in drafting the Code, Congress was aware of, could describe, and was capable of legislation with regard to, the specific circumstance involved in this case—a transfer which, after it was made, left the debtor insolvent. Similar language was not included in § 547. The necessary inference is that Congress meant to include such a circumstance within the operative language of § 548, but not § 547.

## II. THE TRANSFER DID NOT ALLOW THE CREDITOR TO RECEIVE MORE THAN IN A CHAPTER 7 LIQUIDATION

The Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) speaks to the second issue that divides the parties. The Court there held that a foreclosure sale conducted in accordance with

applicable state law—as was the foreclosure sale in this case—would be presumed to be "reasonably equivalent value" under § 548. If the price received at a foreclosure is reasonably equivalent to the value of the property sold, then parity of reasoning would suggest that such a foreclosure sale would not have the effect of "enabl[ing] such creditor to receive more than such creditor would receive" in a chapter 7. 11 U.S.C. § 547(b)(5). In other words, the creditor received reasonably equivalent value at the foreclosure sale and that is what the creditor could expect in a Chapter.7.[2]

Because the debtor was not insolvent at the time of the foreclosure sale under § 547(b)(3) and because the creditor did not, under the terms of § 547(b)(5), receive more than it would have been entitled to in a Chapter 7, the decision of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

---

2. In this case, as in *BFP*, the foreclosing creditor later resold the property at a price greater than that which he paid at foreclosure. The opposite, of course, easily can happen. Some foreclosing creditors fail to sell the property for even a fraction of the amount of

the bid at the foreclosure sale. This seeming anomaly is due, in some measure, to the fact that creditors who bid at foreclosure almost always are bidding the amount of a pre-existing claim rather than investing fresh cash.