In re Tenisha D. BROWN, Debtor.

Beal Bank SSB, Movant,

v.

Tenisha D. Brown, Respondent.

No. 04–25874 BM.

United States Bankruptcy Court, W.D. Pennsylvania.

July 12, 2004.

Leslie E. Puida, Goldbeck, McCafferty & McKeever, Philadelphia, PA, Donna M. Donaher, Tucker Arensberg, PC, Pittsburgh, PA, for Beal Bank.

Thomas A. Crawford, Jr., Crawford & Weiss, Pittsburgh, PA, for Debtor.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Beal Bank, S.S.B., has brought a motion for relief from the automatic stay with respect to real property in which debtor Tenisha Brown had an interest as a co-owner. It purchased the property at a sheriff's sale on the same day as debtor filed a voluntary chapter 7 petition. Beal Bank seeks relief from the automatic stay so that it may obtain legal title to the property and acquire the right to possession thereof.

Debtor maintains that the motion should be denied because she filed her chapter 7 petition shortly before the sheriff's sale of the property took place.

Beal Bank's motion will be denied. Moreover, we conclude that the sheriff's sale of the property was void *ab initio* because it violated the automatic stay that arose immediately when debtor filed her chapter 7 petition.

— FACTS —

Debtor owns a house with one Jacqueline Sparrow as joint tenants with right of survivorship. The property is subject to a mortgage lien in favor of Beal Bank.

Beal Bank initiated a foreclosure action at some unspecified time in 2003 when debtor and Ms. Sparrow defaulted on their obligations to Beal Bank. A writ of execution was issued after Beal Bank obtained a judgment in its favor.

A sheriff's sale of the property was scheduled to take place at 9:00 a.m. on May 3, 2004. The property was third on the list of properties scheduled for sale at that time. Beal Bank purchased the property at the sale. A sheriff's deed to the property was not issued at that time, however, and to date has not been issued.

Debtor filed a voluntary chapter 7 petition on the morning of May 3, 2004, the same day as the sheriff's sale was scheduled to take place.[1] Counsel to debtor went to the office of the clerk of this court on that day shortly before it opened for business and handed the petition and required filing fee to an employee of the clerk at the intake window as soon as the office opened at 9:00 a.m.

---

1. Ms. Sparrow also filed a voluntary chapter 7 petition at the same time as did debtor. They have the same bankruptcy counsel.

Pursuant to the local rules of this court, electronic filing of all pleadings is mandatory in this court. Local Rule 5005–1. Counsel to debtor was not, however, equipped or approved for electronic filing at the time.

After briefly reviewing the petition, which was type-written on 8″ by 11½″ paper, the intake clerk handed it back to counsel with the instruction to scan the petition into the court's electronic filing system and to return to the intake window once scanning was completed. The scanner used by debtor's counsel is located in the public area of the clerk's office.

Counsel to debtor returned to the intake window as soon as he completed the scanning of debtor's chapter 7 petition. After reviewing the electronic version of the petition, the intake clerk accepted the required filing fee. The court's computer then assigned a case number to the petition and electronically stamped the time of day and the date indicating when the filing process was completed. In this instance, the time stamp indicates that the case was "filed" at 9:30 a.m. on May 3, 2004.

While all of this was happening in the clerk's office, a sheriff's sale of the above property took place. The sale occurred no later than 9:15 a.m. on May 3, 2004.

The schedules accompanying debtor's petition listed assets with a total declared value of $48,918.00 and liabilities totaling $56,607.78. Included among debtor's assets was the above jointly-owned property. Its declared value was $48,400.00. Included among debtor's liabilities was a mortgage in the amount of $43,795.24 which had been assigned to Beal Bank in March of 2004.

On May 10, 2004, one week after the filing of the chapter 7 petition and the sheriff's sale, Beal Bank brought a motion for relief from the automatic stay for cause pursuant to § 362(d)(1) of the Bankruptcy Code to "complete foreclosure on its mortgage and [to] pursue a possessory action".

A hearing on the motion and debtor's opposition thereto was held as scheduled on June 1, 2004. The primary issue raised by the parties at the hearing was whether the sheriff's sale of the property occurred *before* or *after* the filing of debtor's bankruptcy petition.

When neither side was prepared to offer evidence at the hearing, they were instructed to file, within twenty days thereafter, affidavits concerning the precise time when debtor's bankruptcy petition was filed and when the sheriff's sale of property was concluded along with briefs in support of their respective positions. The parties have done so and the matter is now in a posture for decision.

## — DISCUSSION —

■ The precise time when a sheriff's sale occurs under Pennsylvania law is "when the hammer falls". *Pennsylvania Company for Insurances on Lives v. Broad Street Hospital,* 354 Pa. 123, 128, 47 A.2d 281, 283 (1946). The purchaser acquires vested equitable ownership of the property as of that moment. *Butler v. Lomas & Nettleton Co.,* 862 F.2d 1015, 1019 (3d Cir.1988).

■ The previous owner is divested of any equitable or beneficial interest in the property when "the hammer falls". *Davis v. SunTrust Mortgage Co. (In re Davis),* 281 B.R. 626, 633 (Bankr.W.D.Pa.2002).

■ Once "the hammer falls", the purchaser also acquires a right to a deed to the property upon complying with the terms of the sale. *Pennsylvania Company for Insurances,* 354 Pa. at 128, 47 A.2d at 283. The right to possession of the property, however, does not pass to the purchaser upon completion of the sheriff's

sale but instead remains with the former owner until the sheriff executes and delivers a deed to the purchaser. *Butler*, 862 F.2d at 1019.

It is not disputed in this matter that *if* debtor's bankruptcy petition was filed *before* "the hammer fell" at the sheriff's sale, both legal and equitable title to the property became property of debtor's bankruptcy estate and the sheriff's sale was in violation of the automatic stay.

It also is not disputed that *if* debtor's bankruptcy petition was filed *after* "the hammer fell", the bankruptcy estate had legal title to the property but had no equitable or beneficial interest therein because a sheriff's deed had not yet been executed and delivered to Beal Bank; moreover, the sheriff's sale was not in violation of the automatic stay if the petition was filed "after the hammer fell".

■ The threshold issue we must resolve is precisely when debtor's bankruptcy was "filed". Was it before or after "the hammer fell" at the sheriff's sale?

According to the Bankruptcy Code, a voluntary bankruptcy case is commenced "by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter". 11 U.S.C. § 301. It is not disputed that debtor qualifies as a chapter 7 debtor.

This provision is singularly unhelpful in resolving the issue presently under consideration. Although § 301 provides that a voluntary bankruptcy case is commenced by the filing of a petition, it does not indicate how to determine precisely when a "filing" occurs. Nothing in the Bankruptcy Code provides any guidance for making such a determination.

■ The predominant position of those courts to have addressed the question is that a bankruptcy petition is filed for purposes of § 301 when it is first placed in the actual or constructive possession of the clerk of the bankruptcy court. The time stamped on the petition by the clerk is not necessarily dispositive.

One of the leading cases on the issue in a bankruptcy context is *Wood v. Godfrey (In re Godfrey)*, 102 B.R. 769, 771 (9th Cir. BAP 1989); see also *National Westminster Bank, N.J. v. Markings Associates*, 1992 WL 281158, *2 (D.N.J.1992); *In re Domaleczny*, 142 B.R. 287, 288–89 (Bankr. N.D.Ill.1992).

■ If there is a dispute as to precisely when a bankruptcy petition was placed in the possession of the clerk, the time and date stamped on the petition gives rise to a presumption that the petition was filed at the time and on the date so indicated. *In re Godfrey*, 102 B.R. at 771. The presumption is not conclusive, however. To rebut the presumption, a debtor must establish that the petition first was placed in the clerk's custody or possession before the time and date stamped on the petition. *In re Schleier*, 290 B.R. 45, 50 (Bankr.S.D.N.Y.2003).

These decisions trace their ancestry to a series of cases from the Ninth Circuit which set forth a general rule for determining in certain situations whether a nonbankruptcy civil action was barred as untimely because the applicable statute of limitation had run its course before the complaint was filed.

It was held in *Cintron v. Union Pacific Railroad Co.*, 813 F.2d 917 (9th Cir.1987), for example, that a civil action is commenced when the complaint is first placed in the actual or constructive possession of the clerk of court. 813 F.2d at 920.

In *Cintron*, an FELA case, plaintiff's complaint was initially received through the mail by the clerk of court approximately one week before the applicable statute

of limitation had run its course. The clerk stamped the complaint indicating when it was received and mailed it back to the plaintiff because the complaint did not conform to certain local rules and because plaintiff had remitted a check in an amount greater than the required filing fee. 813 F.2d at 919.

Counsel to plaintiff received the returned complaint through the mail two days after the statute of limitation had run and returned it to the clerk by mail four days later after making the required changes and remitting the correct filing fee. Upon receiving the corrected complaint, the clerk immediately stamped on the complaint the time and date it was received. 813 F.2d at 919.

After denying plaintiff's request to have the clerk re-file the complaint as of the date on which it initially was received, which date was prior to expiration of the applicable statute of limitation, the court dismissed the case on the ground that it was time-barred. 813 F.2d at 919.

Applying the above-stated general rule for determining when a civil action is commenced, the Ninth Circuit concluded that plaintiff had constructively filed the complaint when it initially was received by the clerk and reversed the order dismissing the complaint as untimely. 813 F.2d at 920.

The general rule that a complaint in a civil action is filed when it is first placed in the custody or possession of the clerk is not original to *Cintron.* Earlier Ninth Circuit decision had applied the same general rule. E.g., *United States v. Dae Rim Fishery,* 794 F.2d 1392, 1395 (9th Cir. 1986); also *Loya v. Desert Sands Unified School District,* 721 F.2d 279, 280 (9th Cir.1983).

Application of the above general rule in cases where a civil action may have run afoul of the applicable statute of limitation is not limited to the Ninth Circuit. Our limited research shows that other circuit courts have adopted the same rule in similar situations. For instance, *Toliver v. Sullivan County,* 841 F.2d 41, 42 (2d Cir. 1988); *Hunt v. Stone,* 39 F.3d 1177 (4th Cir.1994); *McClellon v. Lone Star Gas Co.,* 66 F.3d 98, 101 (5th Cir.1995); *In re Toler,* 999 F.2d 140, 142 (6th Cir.1993); *Gilardi v. Schroeder,* 833 F.2d 1226, 1233 (7th Cir.1987); *Rodgers on Behalf of Jones v. Bowen,* 790 F.2d 1550, 1552 (11th Cir. 1986); and *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1058 n. 2 (D.C.Cir. 1988). Certain of these decisions cite to the above Ninth Circuit cases as support for the general principle.

The Third Circuit adopted the same (or a very similar) general rule in *McDowell v. Delaware State Police,* 88 F.3d 188 (3d Cir.1996).

The plaintiff in *McDowell* initially filed with the clerk of the district court a *pro* se pleading captioned "Motion for Compensation" which in substance, if not in form, was intended as a complaint. The pleading was received by the clerk one day before the applicable statute of limitation was to expire. Plaintiff, who was incarcerated at the time, did not, however, enclose the required filing fee or an application to proceed *in forma pauperis.* 88 F.3d at 189.

Instead of docketing the complaint or opening a case file, the clerk wrote a letter to the plaintiff advising that the "motion" would not be considered unless plaintiff filed a complaint that complied with the Federal Rules of Civil Procedure and the court's local rules. Plaintiff was further advised that he had to pay the required filing fee or submit an application requesting leave to proceed *in forma pauperis.* 88 F.3d at 190.

Fourteen months later, long after the applicable statute of limitation had expired, the plaintiff wrote a letter to the clerk stating that he had intended for his earlier "Motion for Compensation" to be a complaint. Enclosed with the letter was a complaint purporting to assert a cause of action under 42 U.S.C. § 1983 as well as various state law causes of action. Also enclosed was an application for leave to proceed *in forma pauperis*. 88 F.3d at 190.

After the District Court granted the application to proceed *in forma pauperis*, defendants filed a motion to dismiss the complaint on the ground that the action was time-barred because it had been filed after the applicable statute of limitation had expired. The District Court concluded that the complaint was filed prior to the expiration of the statute of limitation, but dismissed the complaint anyhow because the fourteen-month delay in requesting leave to proceed *in forma pauperis* had rendered the timely-filed complaint untimely. Plaintiff appealed the order of dismissal. 88 F.3d at 190.

The Third Circuit agreed with the District Court that remittance of the required filing fee is "not jurisdictional" and that the clerk should have accepted the filing notwithstanding plaintiff's failure to remit the required filing fee or to submit an application for leave to proceed *in forma pauperis*. Moreover, after conceding that a complaint is not "formally" filed until the filing fee is paid, the Third Circuit went on the state that:

> [w]e deem a complaint to be constructively filed as of the date that the clerk

received the complaint—as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*. See *Rodgers ex rel Jones v. Bowen*, 790 F.2d 1550, 1552 (11th Cir.1986) (holding that a complaint is deemed "filed" for statute of limitations purposes when actually or constructively received by the court clerk—despite the untimely payment of the filing fee).

. . . .

88 F.3d at 190.

We previously characterized *Rodgers* as deriving its ancestry from the above general rule articulated in *Cintron*. From this we infer that the Third Circuit has adopted the same general rule as is set forth in *Cintron* for determining when a complaint is filed in a civil action in certain situations in which expiration of the statute of limitation is at issue. Applying the relation-back principle concerning when a complaint is constructively filed, the Third Circuit concluded that the complaint was constructively filed in a timely manner when the clerk received the initial complaint one day before the statute of limitation had expired. 88 F.3d at 191.[2]

After so concluding, the Third Circuit then rejected the determination of the district court that the fourteen-month period between the clerk's rejection of the initial pleading and the filing of the application to proceed *in forma pauperis* rendered the timely-filed complaint untimely. No evidence was presented showing that the plaintiff had acted in bad faith or that

**2.** Shortly after deciding *McDowell,* the Third Circuit reiterated the same general principle in another case when it stated:

Where a complaint is not "filed" until after the statute of limitation runs but was "submitted" to the clerk before the statute of limitation runs, the formal filing of the

complaint relates back to the date on which it was submitted. *McDowell v. Delaware State Police,* 88 F.3d 188 (3d Cir.1996) makes this very point.

*Urrutia v. Harrisburg County Police Department,* 91 F.3d 451, 457 n. 8 (3d Cir.1996).

defendants were prejudiced by the delay. Moreover, the plaintiff had a plausible excuse for the lengthy delay. 88 F.3d at 191.[3]

The above general rule, we conclude, is appropriate for determining exactly when debtor's chapter 7 bankruptcy petition in this case was filed.

The language of Federal Rule of Civil Procedure 3 and of § 301 of the Bankruptcy Code are similar. According to Federal Rule of Civil Procedure 3, a civil action is commenced by filing a complaint with the court. According to § 301, a voluntary bankruptcy case is commenced by the filing of a petition with the court. Federal Rule of Bankruptcy Procedure 1002 makes clear that the petition is to be filed specifically with the clerk of the bankruptcy court. Given these similarities, we conclude that the standard for determining when a complaint in a civil action is filed also applies to determining when a bankruptcy petition is filed.

Applying this general rule to the facts of this case, we conclude that debtor's chapter 7 bankruptcy petition was filed shortly *before* "the hammer fell" at the sheriff's sale of the property in which debtor had an interest as a joint tenant.

Debtor's petition was constructively filed at 9:00 AM on May 3, 2004, when debtor's counsel handed the petition to the intake clerk and tendered the required filing fee. The need for counsel to take back the petition so that he could scan it into the court's electronic filing system does not change this conclusion. The fact that the petition was not accepted and stamped by the computer until 9:30 AM on May 3, 2004, is not dispositive in this regard. It indicates merely when debtor's bankruptcy petition was formally filed, not when it was constructively filed.

█ If the time of the constructive filing and the time of the formal filing are different, the time of the constructive filing is dispositive in determining when a bankruptcy filing has occurred where the precise time of the filing is at issue.

The sheriff's sale of the property in which debtor had an interest as a joint tenant, we conclude, occurred shortly *after* 9:00 AM on May 3, 2004. Beal Bank has submitted an affidavit by an attorney who attended the sheriff's sale on its behalf. According to the affiant, the property was third on the list of properties scheduled for sale beginning at 9:00 AM on that day. According to the affiant's "best recollection", the sale of the property occurred "between 9:00 AM and 9:15 AM on May 3, 2004".

Because there is no indication that the two sales scheduled to take place before the sale of the property in which debtor had an interest did not go forward, we can infer with a reasonable measure of confidence that the property in which debtor had an interest was not sold until some time shortly *after* 9:00 AM on that day. We previously determined that debtor's chapter 7 petition was filed at precisely 9:00 AM on that date.

We therefore conclude in light of this determination that debtor's interest in the property in question was property of her bankruptcy estate by the time "the hammer fell" at the sheriff's sale. Debtor had both a legal and an equitable interest in the property when her bankruptcy case commenced. See 11 U.S.C. § 541(a)(1).

We further conclude that the sheriff's sale of the property was in violation of the

---

**3.** We need not dwell on the intricacies of this portion of the court's analysis as they are not relevant in deciding the issue now before us.

automatic stay. At the very least, the sheriff's sale amounted to the enforcement, against property of the bankruptcy estate, of a pre-petition judgment against debtor. 11 U.S.C. § 362(a)(2).[4]

■■■ Our analysis does not end here. It remains to be determined whether Beal Bank's motion for relief from the automatic stay should be granted or denied in this instance.

The Bankruptcy Code provides in relevant part as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d).

As the moving party seeking relief from the automatic stay, Beal Bank has the burden of proving that debtor has no equity in the property, while debtor has the burden of proof as to all other issues. 11 U.S.C. § 362(g).

The basis on which Beal Bank seeks relief from the automatic stay is not clear-ly stated in its motion. It appears that Beal seeks relief "for cause" in accordance with § 362(d)(1). What that purported "cause" may be remains to be determined.

It was noted previously that a sheriff's deed was not executed and delivered to Beal Bank prior to debtor's bankruptcy filing and that debtor remains in possession of the property.

Assuming that "the hammer fell" before the bankruptcy petition was filed, it would follow that Beak Bank at this point would have an equitable interest in the property but would not have legal title thereto or the right of possession. Legal title and the right of possession would remain with the debtor in such a situation until a sheriff's deed was executed and delivered to Beal Bank. See *Butler*, 862 F.2d at 1019. If this assumption is correct, Beal Bank apparently seeks relief from the automatic stay for cause in this instance so that it may obtain legal title to the property and take appropriate legal action to enforce its right to possession of the property—i.e., to evict debtor from the property.[5]

Beal Bank's motion for relief from the automatic stay so that it may do these things must be denied for reasons that follow.

■■■ As a general matter, post-petition judicial actions or proceedings in a forum other than bankruptcy court are void *ab initio* in the absence of relief from the automatic stay. See *Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206–07 (3d Cir.1991); also *Constitu-*

---

4. There is no indication that debtor or Beal Bank knew of debtor's bankruptcy filing when the sale occurred. Because the matter is not before us, we will not address the ramifications of this violation of the automatic stay.

5. It does not appear that Beal Bank seeks retroactive relief from the automatic stay to validate the sheriff's sale, which occurred only minutes after debtor had filed her chapter 7 petition. It instead (mistakenly) maintains that the sheriff's sale occurred before the petition was filed and consequently was not in violation of the automatic stay.

*tion Bank v. Tubbs,* 68 F.3d 685, 692 (3d Cir.1995).

 This general rule is not without exception. Inclusion of the word "annulling" in § 362(d) allows the granting of retroactive relief from the automatic stay in certain instances to validate certain acts or proceedings that otherwise would be void *ab initio. In re Siciliano,* 13 F.3d 748, 751 (3d Cir.1994). Such actions or proceedings are voidable rather than void *ab initio. Constitution Bank,* 68 F.3d at 692 n. 6.

Applying these principles to the present matter, we conclude that the sheriff's sale of the property in which debtor has an interest is void *ab initio.* The action whereby Beal Bank obtained the equitable interest in the property is a nullity. This being so, there is no basis or reason for granting Beal Bank relief from the automatic stay so that Beal Bank may acquire legal title to the property and the right to possess it.

As was noted previously, the sole "cause" for relief from the automatic stay in this instance is predicated on the assumption that "the hammer fell" at the sheriff's sale before debtor filed her bankruptcy petition. We have determined that this assumption is incorrect. Debtor has offered no other "cause" for granting relief from the automatic stay in accordance with § 362(d). Moreover, we know of no cause ourselves that would merit granting Beal Bank relief from the automatic stay.

Finally, there is no basis for granting Beal Bank relief from the automatic stay in accordance with § 362(d)(2). In particular, Beal Bank has offered no evidence whatsoever establishing that debtor has no equity in the property and consequently has not met its burden of proof on this issue.

An order shall issue denying the motion of Beal Bank for relief from the automatic stay and declaring that the sheriff's sale on May 3, 2004, of property in which debtor had an interest is void *ab initio.*

### *ORDER OF COURT*

**AND NOW,** at Pittsburgh this *12th* day of *July,* 2004, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the motion by Beal Bank for relief from the automatic stay be and hereby is **DENIED.**

It is further **ORDERED, ADJUDGED,** and **DECREED** that the sheriff's sale on May 3, 2004, of real property in which debtor had an interest is **VOID *AB INITIO.***

It is **SO ORDERED.**