In re Joseph F. ROCCO, Christina L. Rocco, Debtors.

JP Morgan Chase Bank, as Trustee for the Truman Capital Mortgage Loan Trust 2002–2, Movant,

v.

Joseph L. Rocco and Christina L. Rocco and Ronda J. Winnecour, Esquire (Trustee), Respondents.

No. 04–24895 TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 6, 2005.

David A. Collechia, for Debtor/Respondent.

Dorothy A. Davis, JP Morgan Chase Bank, Donna M. Donaher, National Real Estate Infm. Services, Pittsburgh, PA, for Movant.

## *MEMORANDUM OPINION*

THOMAS P. AGRESTI, Bankruptcy Judge.

The matter before the Court is the "Motion for Relief from Stay to Proceed with Eviction" filed by JP Morgan Chase Bank, as Trustee for the Truman Capital Mortgage Loan Trust 2002–2 involving the residence of the Debtor/ Respondents, Joseph L. Rocco and Christina L. Rocco. For the reasons expressed below, which constitute the Court's findings of fact and conclusions of law, the Motion for Relief from Stay is granted.

## BACKGROUND

Debtors filed the present proceeding under Chapter 13 of the Bankruptcy Code on April 13, 2004. They had previously filed a Chapter 13 case on January 2, 2004 which was dismissed on February 3, 2004 for failure to complete the petition. Prior to the filings, Movant JP Morgan Chase Bank, as Trustee for the Truman Capital Mortgage Loan Trust 2002–2 ("JP Morgan") held a mortgage on the Debtors' residence, i.e., 189 Butz Road, Latrobe, Pennsylvania ("premises".) Upon default, JP Morgan commenced a foreclosure action against the Debtors in the Court of Common Pleas of Westmoreland County, Pennsylvania resulting in. JP Morgan's purchase of the premises at sheriff sale. As the owner of the premises, JP Morgan filed the motion for relief currently under consideration ostensibly pursuant to 11 U.S.C. § 362(d)(1). In support of its ownership claim are the allegations admitted by the Debtors in their Response to JP Morgan's Motion: a sheriff's sale was held on March 1, 2004, at which JP Morgan purchased the premises; the deed to the premises was recorded on April 6, 2004; and, an ejectment action was instituted in Westmoreland County Court on March 9, 2004 which was stayed by the filing of this bankruptcy. As owner of the premises JP Morgan claims "cause" exists for grant of its motion.

At the final hearing on the Motion for Relief from Stay, counsel for JP Morgan advised that as of September 9, 2004, the balance owed on the mortgage was $137,493.50. The market value was estimated to be $137,500. Counsel for the Debtors did not dispute this statement of value nor did Debtors claim any equity in the premises. The Debtors did not dispute that the last time a regular monthly mortgage payment had been made was believed to have been in September 2003. Nevertheless, Debtors' counsel claimed that monthly payments in excess of the amount of the mortgage payment had been contributed to the plan by the Debtors but not distributed to date by the Chapter 13 Trustee.[1]

---

1. Debtors' counsel asserted at the final hearing that approximately $1000 per month is

Also pending in this bankruptcy is an adversary proceeding filed by the Debtors asserting numerous causes of action. Liability is alleged pursuant to bankruptcy created causes of action in the form of preference and fraudulent transfer, and, non-bankruptcy causes of action alleging statutory violations of truth-in-lending and unfair trade practice laws as well as civil conspiracy.

## DISCUSSION

█ A debtor's estate is comprised of all legal and equitable interests in existence at the commencement of a case pursuant to 11 U.S.C. § 541. The types of property included in a bankruptcy estate are determined by federal law while the extent of a debtor's interest in that property is determined by state law. *In re Pulcini*, 261 B.R. 836, 840 (Bankr.W.D.Pa.2001) *citing In re O'Dowd*, 233 F.3d 197 (3d Cir.2000).

█ The purchaser of real property at a sheriff's sale acquires a vested equitable interest in the property "at the fall of the auctioneer's hammer." *Pulcini, supra, citing Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir.1988). The equitable interest then becomes a "complete title" when the terms of the sale have been met. *Id.* at 841; *In re Brown*, 311 B.R. 721, 724 (Bankr.W.D.Pa.2004). The subsequently acknowledged and delivered sheriff's deed relates back to the sale date. *Id. See also: In re Davis*, 281 B.R. 626, 633 (Bankr.W.D.Pa.2002). The "fall of the hammer" principle maintains vitality as a statement of current law in Pennsylvania despite its relative antiquity. *Pulcini*, 261 B.R. at 840.

█ As noted, JP Morgan seeks relief from stay for "cause", i.e., pursuant to 11 U.S.C. § 362(d)(1), to continue with the enforcement of its right of possession to the premises.[2] It asserts that Debtors no longer have standing to object. JP Morgan also asserts it is now the rightful owner of the premises following the "fall of the hammer" at the March, 2004 sheriff's sale and before the filing of this bankruptcy. Accordingly, JP Morgan claims the Debtors did not possess any interest in the property at the time of bankruptcy filing.

Debtors assert that JP Morgan is adequately protected by Debtors' adversary proceeding. If Debtors are successful in their claim, JP Morgan will either no longer have a claim against Debtors' property or may possibly even owe Debtors damages in the amount of the value of their house. In addition, Debtors contend that this property is necessary to their reorganization because it is the residence they built in 1978 and where they have resided since that time.

At the time of the foreclosure sale the Debtors were not in bankruptcy. At the time of the recording of the sheriff's deed the Debtors were not in bankruptcy. It was not until five days after the recording of the deed that the Roccos filed their petition. At that time JP Morgan had acquired a vested equitable interest in the property. More importantly, upon filing of the deed, JP Morgan's equitable interest changed to complete legal title and the Debtors lost any interest they previously held in the premises. In addition, the Debtors lost their right to redeem the

---

being remitted to the Chapter 13 Trustee to provide for this and other obligations. No payments have been distributed to, accepted or claimed by JP Morgan. According to Debtors' counsel, the regular monthly mortgage payment had been approximately $775.

2. Section 362(d)(1) of the Bankruptcy Code provides that relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest;...." 11 U.S.C. § 362(d)(1).

property pursuant to 41 P.S. § 404 since Pennsylvania law is clear that the mortgagor loses the right to redeem once "the hammer falls." *Pulcini, supra; Davis,* 281 B.R. at 633.

In *Pulcini,* the debtors filed bankruptcy after a sheriff's sale but before the recording of the deed. The court found that the mortgagee held legal title to the property prior to the commencement of the case and that the post-petition acknowledgment and delivery of the deed was not a violation of the automatic stay. The court went further and stated that even if the debtors continued to possess legal title as of the commencement of the case, the outcome would be no different since "cause" existed to lift the stay to permit a purchaser at a sheriff sale to obtain legal title. *Pulcini,* 261 B.R. at 841–42. Despite claims by the Chapter 7 Trustee of his right to avoid the sheriff's sale pursuant to 11 U.S.C. § 547 and § 549, the court ultimately permitted relief from the automatic stay to allow the mortgagee to perfect its title and to permit it to bring an eviction action in state court.

The facts of the instant case are even more dire for the Roccos than those in *Pulcini.* In *Pulcini,* the deed had not yet been recorded. Here, prior to the commencement of this case, the deed had been acknowledged, delivered and actually recorded by JP Morgan. The Debtors therefore lost both equitable and legal title even before the bankruptcy filing.

In *Davis,* a debtor sought to avoid a sheriff's sale pursuant to the preference provisions of 11 U.S.C. § 547 and the fraudulent transfer provisions of 11 U.S.C. § 548 where the debtor's previous bankruptcy had been dismissed prior to a continued sheriff's sale. The debtor then filed a new case and sought to avoid the sale on the basis that the sale was "not regularly conducted", was "not for reasonably equivalent value" and that the debtor was de-

nied due process. The *Davis* court held that at the time the debtor filed his second bankruptcy, he no longer had any equitable interest in the property since the deed had already been recorded. *Id.* at 634. In analyzing the avoidability of the sheriff's sale, the court discussed the findings and holding of *Pulcini.* As in *Pulcini,* the *Davis* court found that the debtor had no standing and therefore could not assert lack of receipt of reasonably equivalent value. The allegation that the sale was either an avoidable preference or fraudulent transfer was also found to be without merit.

In their brief in support of their adversary complaint, the Debtors argue that the cases of *Pulcini* and *Davis* are inapplicable. However, such alleged inapplicability was addressed only to the bankruptcy created causes of action alleged by the Debtors pursuant to 11 U.S.C. § 547 and § 548. The Debtors take issue with the *Pulcini* decision for its alleged failure to correctly interpret specific Bankruptcy Code sections regarding avoidance actions. Similarly, the Debtors attempt to distinguish *Davis* by claiming the Bankruptcy Code subsection analyzed in *Davis* was different than the subsection cited in their adversary complaint. The applicability of the state law principles as set forth in those cases is not disputed by the Debtors. As to the references to Pennsylvania state law regarding the "fall of the hammer" and Debtors' interests at the commencement of the case, no specific distinctions between their case and the facts in *Davis* and *Pulcini* have been made by the Debtors.

Based on Pennsylvania state law, as well as other bankruptcy cases decided within this District, it is clear the Debtors did not possess any legal or equitable interest in the premises at the commencement of this case. As such, the Debtors possessed no

legal or equitable interest in the premises that could upon the filing of this case become property of this estate pursuant to 11 U.S.C. § 541. Accordingly, as in *Pulcini* and *Davis*, the Debtors have no standing to object to relief from stay.

■ If Debtors had retained an interest in the premises, the filing of this bankruptcy would have provided them with certain causes of action not previously available to them. The Debtors attempted to take advantage of this event by raising a preference claim pursuant to 11 U.S.C. § 547 and alleging a fraudulent transfer based on 11 U.S.C. § 548 in their related adversary proceeding at Adversary No. 04–02592. In response to JP Morgan's Motion for Relief from Stay the Debtors incorporated these claims as defenses to the Motion.

Count 1 of the Debtors' adversary complaint is entitled "Violation of Bankruptcy Code Section 547." Many of the allegations asserted in Count 1 address matters other than preference. The Debtors do not specifically allege the various elements of Section 547(b). Nevertheless, the issue of avoidance of the sheriff's sale since constituting a "preference" is similar to that raised in *Pulcini, supra*, where the trustee sought to avoid a prepetition sheriff's sale for the benefit of the estate. There the lien creditor had purchased the property at sheriff's sale and then sold the property to an independent third party. In *Pulcini*, the court analyzed various cases previously dealing with the applicability of § 547(b) in the context of a prepetition sheriff's sale. The holding of *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), was found applicable to a preference action despite that *BFP* dealt with an action brought in the context of a fraudulent transfer under 11 U.S.C. § 548. *BFP* held that if applicable state foreclosure requirements are met,

the price obtained at the foreclosure sale constitutes reasonably equivalent value as a matter of law. *Id.*, at 545, 114 S.Ct. 1757. Applying the rationale of *BFP*, the *Pulcini* court found:

> It compels the conclusion that a prepetition transfer of a debtor's interest in real property to a lien creditor who purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then sells the property to at third party for an amount greater than the amount of its lien is not avoidable in accordance with § 547(b) as a preference. In particular, the lien creditor does *not* "receive more" for purposes of § 547(b)(5) than it would receive in a chapter 7 liquidation.

261 B.R. at 844.

In an effort to side step the applicability of *Pulcini* the Debtors assert that "collusiveness" did occur in their situation because the prerequisites of a "regularly-conducted, non-collusive sheriff's sale" were not met. When pressed at the hearing to specifically direct the Court to the allegations of collusiveness, Debtors' counsel referred the Court to allegations set forth in paragraphs 19 through 37 of the complaint filed in the pending adversary. These paragraphs, however, refer to the underlying mortgage transaction itself, not to the sheriff's sale or the conduct of the sheriff's sale. The Debtors have raised no allegations of collusion at the sheriff's sale itself or that the sale was conducted improperly or contrary to applicable state law. No allegations are made that Pennsylvania foreclosure law has not been complied with. Accordingly, we find that JP Morgan obtained title at a regularly-conducted, non-collusive sheriff's sale and therefore *Pulcini* and *Davis* are controlling under these facts.

The Debtors further urge this Court to follow the decision of *In re Andrews*, 262

B.R. 299 (Bankr.M.D.Pa.2001) decided prior to *Pulcini* and *Davis*. *Andrews* found that a preference action to avoid a prepetition sheriff's sale could be maintained by a Chapter 13 debtor. The *Andrews* court found *BFP* inapplicable to the issue before it, i.e., whether the creditor in a prepetition sheriff's sale received more than it would have received without the foreclosure sale and in a Chapter 7 liquidation as is contemplated by 11 U.S.C. § 547(b)(5). *Id.* at 304. Specifically, the *Andrews* court found that when the secured claim of the foreclosing party is substantially less than the fair market value of the property, a prepetition bankruptcy foreclosure may be avoided pursuant to 11 U.S.C. § 547. *Id.* at 306.

*Andrews* is initially distinguishable from the instant case in that the court specifically found that the debtor possessed standing. In *Andrews*, it was stipulated by the parties that the debtor possessed standing to pursue her claim, i.e., post bankruptcy the debtor possessed a legal interest in the real estate even though it was subject to a prepetition sheriff's sale. *Id.*, at 302. Here JP Morgan made no such admission. Moreover, even if this Court were to follow *Andrews*, the outcome would be no different. As noted, *Andrews* determined that a prepetition bankruptcy foreclosure sale can be avoided under the dictates of 11 U.S.C. § 547 when the secured claim of the foreclosing party is "substantially less" than the fair market value of the property. *Id.* at 306. The record here does not support a finding that JP Morgan's claim

is "substantially less" than the fair market value of the Debtors' residence.

It is not disputed that as of September 9, 2004 the fair market value of the premises was $137,500 and the debt owed JP Morgan was $137,493.50. As such, at least as of September, 2004 the amount owed on the mortgage claim and the value of the premises equaled each other. While this comparison of fair market value to debt owed was not as of the date of the sheriff's sale, we can infer with a reasonable amount of confidence that a more time specific date of 6 months earlier would not alter our analysis. Counsel for the Debtors represented that the regular monthly mortgage payment for the Debtors' 30 year mortgage, obtained in July, 2000, was approximately $775. Any equity possibly accumulating in the premises over this period would be *de minimus*. Because the value of the premises essentially equaled the debt owed by the Debtors, even if we were to follow the *Andrews* holding, it is clear under these facts that JP Morgan's secured claim is not "substantially less" than the fair market value of the premises.[3]

Nor was the *Andrews* court persuaded by the finding in *In re FIBSA Forwarding, Inc.*, 230 B.R. 334 (Bankr.S.D.Tx. 1999), *aff'd*, 244 B.R. 94 (S.D.Tex.1999) that subjecting prepetition foreclosure sales to avoidance would disrupt the state court foreclosure scheme. *Andrews*, 262 B.R. at 305. Such concerns were raised in *Pulcini*. The *Pulcini* court stated that if the trustee's position was adopted, such a finding "...unquestionably would pro-

---

**3.** Section 547(b)(5) requires the Debtors in proving a preference to demonstrate under a hypothetical Chapter 7 liquidation that JP Morgan would have received "more" as of the petition date via distribution upon liquidation of the premises. Clearly in light of the admitted facts JP Morgan would not have received "more" under such circumstances. Most

probably the Chapter 7 trustee would not even consider administering the premises since there would be no value yielding a distribution to creditors (other than JP Morgan) once the costs of sale, trustee commission and Debtors' exemptions are considered. *In re Rambo*, 297 B.R. 418, 430–435 (Bankr. E.D.Pa.2003).

foundly affect Pennsylvania's essential interest in making title to real property stable and secure." *Id.* at 836. The concerns expressed and addressed by *Pulcini* are valid, well reasoned and persuasive. In light of the foregoing and consistent with the *Pulcini* analysis as applied to the facts of this case, 11 U.S.C. § 547 is not available to the Debtors as a defense to JP Morgan's motion. *See also: Davis, supra; In re Rambo,* 297 B.R. 418 (Bankr.E.D.Pa. 2003).

■ A similar analysis applies when reviewing the Debtors' fraudulent conveyance defense theory under 11 U.S.C. § 548. As noted by the courts in both *Pulcini* and *Davis,* the Supreme Court in *BFP* made clear that the purchase price received at a sheriff's sale complying with the requirements of state foreclosure law constitutes reasonably equivalent value for purposes of § 548(a)(2).

JP Morgan advised at the final hearing and in its *Memorandum of Law in Support of Motion to Dismiss Complaint and Crossclaim and in Support of It's Motion for Relief from Automatic Stay* that it "paid $1.00" for the premises at the sheriff's sale. JP Morgan claimed the premises to be valued at approximately $137,500.00. At the time of the final hearing JP Morgan asserted it was owed approximately $137,493.50. The Debtors did not dispute any of the foregoing. The outstanding mortgage, interest, escrow advances, fees and costs incurred equaled the fair market value of the premises thereby constituting reasonable equivalent value. *Davis, supra.* Even absent the *BFP* holding, such a conclusion regarding reasonably equivalent value is warranted under these facts.

■ It is also important to note that the non-bankruptcy claims now raised by the Debtors in both their adversary complaint and incorporated by reference in what was styled "Answer, New Matter and Counterclaim" (which the Court accepts as part of the Debtors' Response to the Motion for Relief from Stay) were never raised in the state court mortgage foreclosure proceedings. This is not disputed by the Debtors. The state court allegations raised in the adversary complaint go directly to the underlying mortgage transactions and should have been raised as defenses to the mortgage foreclosure complaint and cannot now be raised to set aside a complete, regularly-conducted, non-collusive foreclosure sale. Pa.R.C.P. 1030, 1032; *Urban Redevelopment Authority of Pittsburgh v. KML Sales, Inc.,* 391 Pa.Super. 92, 570 A.2d 528 (1990).

Even assuming that the Debtors had standing, they have presented no viable defense to JP Morgan's Motion for Relief from Stay. As the *Pulcini* court stated regarding its grant of relief from the automatic stay:

Cause pursuant to § 362(d) also exists for granting CMB [mortgagee] relief from the automatic stay to permit it to bring an action in state court to have debtors evicted from the property. Debtors, who do not have an equitable interest in the property and who either already do not have or shortly will not have legal title thereto, are occupying the premises without paying any rent. We are aware of no good reason why they should be allowed to remain on the property under such circumstances. *Pulcini, 261 B.R. at 842.*

■ Having determined that the Debtors have neither legal nor equitable interest in the premises, the Court need go no further. Cause under 11 U.S.C. § 362(d)(1) exists to grant JP Morgan's motion. Nevertheless, the Court will address the issue of adequate protection since also raised by the Debtors in defense

to the Motion for Relief. Although adequate protection is not defined in the Bankruptcy Code, 11 U.S.C. § 361 provides for three, nonexclusive forms of adequate protection. Those forms are: (1) periodic cash payment; (2) additional or replacement lien; and (3) the "indubitable equivalent" of the secured creditor's interest in the property. 11 U.S.C. § 361; *In re Swedeland Development Group, Inc.*, 16 F.3d 552 (3d Cir.1994). Adequate protection is provided to insure that a secured creditor receives the value of its bargain. *In re Shaw Industries, Inc.*, 300 B.R. 861 (Bankr.W.D.Pa.2003); *In re O'Connor*, 808 F.2d 1393 (10th Cir.1987). What constitutes the appropriate "value" is to be determined by the court on a case by case basis. *O'Connor, 808 F.2d at 1396.* "Since 'value' is the linchpin of adequate protection and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact." *Id.*

Debtors bear the burden of proof on all issues other than equity after a creditor has shown "cause" for lifting the stay. *In re Brown, supra;* 11 U.S.C. § 362(g)(2). As such, if the issue of adequate protection is to be considered, Debtors must establish that the security interest of the secured creditor is adequately protected. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376 (Bankr. E.D.Pa.1987). In attempting to establish adequate protection in this case the Debtors simply claim the contingent, unliquidated claims alleged in their pending adversary action constitute the necessary adequate protection for JP Morgan's secured interest. In *In re Ziegler*, 88 B.R. 67 (Bankr.E.D.Pa.1988), relief from stay was granted where Debtor's offer of adequate protection consisted of a lawsuit. The court stated:

We hold that such a speculative funding source is insufficient to provide adequate protection. Although § 361 lists several non-exclusive methods of providing "adequate protection," the term is not defined. Not surprisingly, this type of lawsuit is not one of the enumerated methods. The legislative history and case law development suggest that adequate protection requires something more than reliance on a contingent, unliquidated lawsuit. *Id.* at 70.

Even absent consideration of the merits of the claims, the time requirements to conclude this adversary must be considered. The complaint raises numerous causes of action and names four different defendants including JP Morgan. The discovery process, dispositive motions, ultimate trial and possible appeal of such a matter would be quite lengthy. During such time, JP Morgan is without an adequate form of protection. Merely stating that after such litigation, if successful, JP Morgan may not have a claim to the premises is not sufficient. In addition to the matter of time, Debtors' adversary proceeding is speculative in nature. Recovery is uncertain. It already appears that the Debtors' bankruptcy created causes of action for preference and fraudulent transfer do not lie. The state created causes of action may be moot or precluded. There is no guarantee of any success on the merits. Such speculation does not provide adequate protection.

For the reasons expressed above, we conclude that the Debtors did not possess any protected property interest in the premises known as 189 Butz Road, Latrobe, PA as of the date of filing this matter. The Debtors have no standing to object to relief from stay. Cause exists to lift the automatic stay. Accordingly, JP Morgan's Motion for Relief from Stay shall be granted entitling it to initiate ejectment

proceedings against the Debtors in state court. An appropriate order shall issue.

### ORDER OF COURT

AND NOW, this *6th* day of *January, 2005*, for the reasons expressed in the Memorandum Opinion of even date, it is hereby **ORDERED, ADJUDGED** *and* **DECREED** that the *Motion for Relief from the Automatic Stay to Proceed with Eviction* filed by Movant JP Morgan Chase Bank, as Trustee for the Truman Capital Mortgage Loan Trust 2002–2 is **GRANTED**.